**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**DEREASE L. IRONS,**

       **Plaintiff,**

**v.**                                                                        **Case No: 6:16-cv-479-Orl-31GJK**

**CITY OF HOLLY HILL, STEPHEN**
**ALDRICH and JAMES PATTON,**

       **Defendants.**

## ORDER

This matter is before the Court on the Motion to Dismiss Plaintiff's First Amended Complaint (Doc. 23) filed by the Defendant, Stephen Aldrich, (Doc. 24) and the Amended Response in Opposition to the Defendant's Motion to Dismiss (Doc. 32) filed by the Plaintiff, Derease Irons.

**I.**     **Background**

Derease Irons brings this action pursuant to 42 U.S.C § 1983 against the City of Holly Hill, Stephen Aldrich, in his official capacity as the Chief of Police for the city of Holly Hill Police Department (hereinafter "the City"),[1] and James Patton,[2] a sergeant of the Holly Hill Police Department.

---

[1] "Where, as here, a section 1983 plaintiff sues government employees (such as police officers) in their official capacities, the suit is in actuality against the government entity that the individuals represent." *Farred v. Hicks*, 915 F.2d 1530, 1532 (11th Cir. 1990) (citations omitted).

[2] The City filed its Motion to Dismiss the Plaintiff's First Amended Complaint (Doc. 24) on July 11, 2016. At that time, Patton had not been served in this action. *See* Doc. 15. Patton waived service on July 20, 2016, (Doc. 30) and on July 22, 2016, Irons filed his Amended Response in Opposition to Defendant's Motion to Dismiss. Doc. 32. Patton's Motion to Dismiss

According to the facts alleged in the First Amended Complaint (Doc. 23), which for the purposes of resolving this motion are taken as true, this matter arises from Irons's warrantless arrest on July 10, 2012. Doc. 23 at ¶¶ 8–34. Around noon of that day, Irons parked his vehicle along the curb at a Wal-Mart, leaving his infant daughter strapped into her car seat with the engine idling. *Id.* at ¶ 9. Fifteen minutes later, Officer Patton came upon the vehicle, briefly looked inside the front, driver-side window, and opened the door. *Id.* at ¶¶ 10–11. Seeing no one, Officer Patton closed the front door then opened the rear, driver-side door, where he discovered Irons's daughter in her child seat. *Id.* at ¶ 12. Irons alleges that, because of the heavily tinted windows and the visor over the car seat, Officer Patton could not have discerned the child in the car until he opened the car door. *Id.* at ¶¶ 13–16. Irons was subsequently arrested for child neglect, charged, and incarcerated while awaiting trial. *Id.* at ¶¶ 22, 24.

On August 14, 2013, in criminal proceedings before the Circuit Court of the Seventh Judicial Circuit for Volusia County, Florida, Irons moved to suppress evidence of his child in the car, arguing that Officer Patton had no probable cause to search when he opened the car door. *Id.* at ¶ 26. On October 4, 2013, the court granted Irons's motion, finding that the car was illegally searched without a warrant or probable cause. *Id.* at ¶ 29. Consequently, all charges were dropped and Irons was released after spending approximately 451 days in the Volusia County Branch Jail. *Id.* at ¶¶ 30–31. Irons alleges that his incarceration led to the loss of his residence, automobile, personal property, two jobs, and his ability to see and spend quality time with his children. *Id.* at ¶¶ 32–34.

In summary, Irons alleges that the City is liable under § 1983, because the City violated his Fourth Amendment right against false arrest and unlawful search and seizure. Specifically, he

---

the First Amended Complaint (Doc. 36) is not yet ripe for consideration.

alleges the following alternatively: (1) that the City followed "practices, customs, and policies which constituted the moving force behind" Irons's injury, *id.* at ¶ 46; (2) that the City ratified Officer Patton's conduct by failing to discipline him, *id.* at ¶ 47; (3) that Officer Patton was a final policymaker for the City because his actions were not immediately reviewable, *id.* at ¶ 48; (4) that Officer Patton was a final policymaker for the City because of his seniority, rank, tenure, and position as a shift supervisor, *id.* at ¶ 49; and (5) that the City failed to adequately train its agents and employees with respect to searches and seizures. *Id.* at ¶ 50. The City proffers two arguments in its Motion to Dismiss (Doc. 24): (1) that any false arrest claim is barred because Officer Patton, in fact, had probable cause to arrest Irons (Doc. 24 at 3–8); and (2) that Irons failed to allege any facts that support a claim of municipal liability under § 1983. (Doc. 24 at 10–15).

## II.     Legal Standard

### A.  Motion to Dismiss

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief" so as to give the defendant fair notice of what the claim is and the grounds upon which it rests, *Conley v. Gibson*, 355 U.S. 41, 47 (1957), *overruled on other grounds*, *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007). A Rule 12(b)(6) motion to dismiss for failure to state a claim merely tests the sufficiency of the complaint; it does not decide the merits of the case. *Milburn v. United States*, 734 F.2d 762, 765 (11th Cir. 1984). In ruling on a motion to dismiss, the Court must accept the factual allegations as true and construe the complaint in the light most favorable to the plaintiff. *SEC v. ESM Group, Inc.*, 835 F.2d 270, 272 (11th Cir. 1988). The Court must also limit its consideration to the pleadings and any exhibits attached thereto. Fed. R. Civ. P. 10(c); *see also GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993).

The plaintiff must provide enough factual allegations to raise a right to relief above the speculative level, *Twombly,* 550 U.S. at 555, and to indicate the presence of the required elements, *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1302 (11th Cir. 2007). Conclusory allegations, unwarranted factual deductions, or legal conclusions masquerading as facts will not prevent dismissal. *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court explained that a complaint need not contain detailed factual allegations, "but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* at 678 (internal citations and quotations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the plaintiff is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Further, a complaint will not survive a motion to dismiss if it does not "contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Id.* at 678 (internal quotations omitted).

## III. Analysis

### A. False Arrest

Probable cause is an absolute bar to § 1983 claims alleging false arrest. *Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir. 1998). A "law enforcement officer has probable cause to arrest a suspect if the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an

offense." *Von Stein v. Brescher*, 904 F.2d 572, 578 (11th Cir. 1990). In other words, probable cause exists where an arrest is objectively reasonable under the totality of the circumstances. *Bailey v. Board of Cty. Com'rs of Alachua Cty., Fla.*, 956 F.2d 1112, 1119 (11th Cir. 1992) (citing *Illinois v. Gates*, 462 U.S. 213, 229 (1983)).

As alleged in the First Amended Complaint, Officer Patton testified in state court that he walked up to the vehicle, briefly looked in the driver's door window, and immediately opened the door—all without seeing the child in the car. Doc. 23 at ¶ 28. The state circuit court concluded that this constituted an illegal search, leading to the exclusion of all evidence acquired after the search under the fruit-of-the-poisonous-tree doctrine. *Id.* at ¶¶ 27–29. However, in the context of a § 1983 claim, "[i]t does not matter whether [the] evidence was discovered in compliance with the Fourth Amendment because the exclusionary rule does not apply in a civil suit against police officers." *Black v. Wigington*, 811 F.3d 1259, 1269 (11th Cir. 2016) (joining the Second and Fifth Circuit Courts, holding that the exclusionary rule and fruit-of-the-poisonous-tree doctrine never apply in a civil suit against police officers). Therefore, even accepting as true Irons's allegation that the search was illegal, the discovery of the infant left alone in the back of Irons's idling car is considered when determining whether Officer Patton had probable cause to arrest.

It is clear on the facts alleged in the First Amended Complaint, that Officer Patton had probable cause to arrest. Irons states that "he parked his car along the curbside, with the engine running and the air conditioning on, and ran inside the Wal-Mart." Doc. 23 at ¶ 9. Irons further states that approximately fifteen minutes later, Officer Patton discovered the infant left alone in the car, and that Irons "emerged from the store several minutes later." *Id.* at ¶¶ 10–12, 20. On these facts, a reasonably prudent officer in the same circumstances would conclude that Irons had

committed an offense.[3] "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Lee v. Ferraro*, 284 F.3d 1188, 1194–95 (11th Cir. 2002) (citing *Atwater v. City of Lago Vista*, 532 U.S. 318 (2001)). Therefore, reviewing the facts in a light most favorable to Irons, Officer Patton had probable cause to arrest, and the City cannot be held liable under § 1983 for false arrest. As such, the Court finds that there are no set of circumstances under which Officer Patton lacked probable cause to arrest Irons, and any attempt to cure this deficiency would fail—thus, the false arrest claim will be dismissed with prejudice. *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1263 (11th Cir. 2004) (finding that amendment is futile when the complaint would still be subject to dismissal after amendment).[4]

### B. Municipal Policy of Unlawful Searches Under § 1983

A government entity is subject to § 1983 liability "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. at 694. Specifically, a plaintiff must demonstrate: "(1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the [municipality's] policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004).

---

[3] In Florida, it is a misdemeanor of the second degree to leave a child younger than six years of age unattended in a motor vehicle for a period in excess of fifteen minutes. *See* FLA. STAT. § 316.6135.

[4] The Court notes that Irons is now representing himself as a pro se litigant, however, all documents before the Court on this motion, including the already-once-amended complaint, were submitted before the termination of his now-former attorney. *See* Doc. 35.

The second element—that a municipal custom or policy exists—can be established in a number of ways: (1) through the explicit setting of an unconstitutional policy by the government, *Monell*, 436 U.S. at 694–95; (2) when a final policymaker within the government commits the unconstitutional act, *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123–30 (1988); (3) when a final policymaker is aware of, and approves of, both the unconstitutional action and the basis for it, before it occurs, *Salvato v. Miley*, 790 F.3d 1286, 1296 (11th Cir. 2015); *Matthews v. Columbia Cty.*, 294 F.3d 1294, 1297 (11th Cir. 2002) (citations omitted); or (4) where the municipality knew of a specific training need and made a deliberate choice not to take action, amounting to deliberate indifference to the rights of those injured. *City of Canton v. Harris*, 489 U.S. 378, 388–90 (1989); *Gold v. City of Miami*, 151 F.3d 1346, 1349–51 (11th Cir. 1998).

Here, Irons alleges all four methods of establishing municipal liability under § 1983. The entirety of his allegations follow:

> 46. Defendant Aldrich, in his official capacity as Police Chief of the Holly Hill Police Department, his agents, and employees, acting within their authority and under color of State law, instituted and followed practices, customs, and policies which constituted the moving force behind the deprivation of Plaintiff's rights to be free from unreasonable search and seizure, which is actionable under 42 U.S.C § 1983, as a violation of the Fourth and Fourteenth Amendments to the United States Constitution.
>
> 47. Alternatively, by failing to discipline his officers for their actions and inactions, Chief Aldrich has ratified his officers' decision and the reasons for those decisions, thus constituting a practice, custom, or policy.
>
> 48. Alternatively, Defendant Patton was a final policy maker for Chief Aldrich, where his actions were not immediately reviewable or effectively reviewable.
>
> 49. Alternatively, Defendant Patton was a final policy maker for Chief Aldrich considering Defendant Patton's seniority, rank, tenure, and position as a shift supervisor with the Holly Hill Police Department.

> 50. Alternatively, Defendant Aldrich, his agents, and employees, acting within their authority under color of State Law, failed to adequately train his agents and employees with respect to searches and seizures under the Fourth and Fourteenth Amendments of the United States Constitution, despite an obvious and apparent need for such training.

Doc. 23 at ¶¶ 46–50.

All of the above allegations are conclusory. "Vague and conclusory allegations will not support a claim under § 1983." *Hall v. Smith*, 170 F. App'x 105, 107–08 (11th Cir. 2006) (affirming dismissal of § 1983 claim against a municipality where the plaintiff alleged no factual support for his conclusory statement that the municipality had a policy or custom of grossly inadequate supervision and training of its employees); *Cannon v. Macon Cty.*, 1 F.3d 1558, 1567 (11th Cir. 1993) (affirming dismissal of a § 1983 claim against a county when the plaintiff failed to "to allege any facts whatsoever to indicate that the alleged violation was a result of a [municipal] policy or practice that would give rise to [municipal] liability"). Simply alleging the elements necessary to state a claim against a municipality, without any factual support, is insufficient for the purpose of a motion to dismiss. *See Gray v. City of Roswell*, 486 Fed. App'x 798, 800–01 (11th Cir. 2012) (holding that a plaintiff failed to state a claim after failing to "recite any facts or policies that would support a claim against" a municipality, and only making "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements") (internal quotation marks omitted).

Irons alleges that the City "instituted and followed practices, customs, and policies" but never reveals any. Irons alleges that Chief Aldrich ratified Officer Patton's actions, but there is no allegation that Police Chief Aldrich knew of, and approved of Officer Patton's alleged misconduct at all, much less before it occurred. *Salvato v. Miley*, 790 F.3d 1286, 1296 (11th Cir. 2015) ("[W]hen plaintiffs are relying not on a pattern of unconstitutional conduct, but on a single

incident, they must demonstrate that local government policymakers had an opportunity to review the subordinate's decision and agreed with both the decision and the decision's basis before a court can hold the government liable on a ratification theory.") (citation omitted).

Next, Irons alleges that Officer Patton was a final policymaker for the City due to his rank as sergeant and position as a shift supervisor, or, in the alternative, that he was a final policymaker because his actions were not immediately or effectively reviewable. "[W]hether a particular official has 'final policymaking authority' is a question of state law." *Prapotnik*, 485 U.S. at 123 (citations omitted). As the Eleventh Circuit has observed, Florida state law indicates that "police chiefs in Florida have final policymaking authority in their respective municipalities for law enforcement matters." *Cooper v. Dillon*, 403 F.3d 1208, 1222 (11th Cir. 2005) (citing FLA. STAT. §§ 166.049, 870.042(2)). Further, the argument that a patrol sergeant is a final policymaker for the City is implausible on its face. *Iqbal*, 556 U.S. at 678. Certainly, Officer Patton had some decision-making duties as a shift supervisor, but it cannot be inferred that his actions "may fairly be said to represent official [municipal] policy." *Monell*, 436 U.S. at 694.

Finally, Irons alleges that Chief Aldrich failed to train his "agents and employees with respect to searches and seizures," but has only provided facts related to Officer Patton's alleged misconduct. The Eleventh Circuit has held that "[a] single incident would not be so pervasive as to be a custom, because a custom must be such a longstanding and widespread practice that it is deemed authorized by policymaking officials because they have known about it, but failed to stop it." *Craig v. Floyd Cty.*, 643 F.3d 1306, 1310 (11th Cir. 2011) (internal citations and quotation marks omitted). Therefore, the single factual scenario provided by Irons will not support the conclusion that a municipal policy or custom exists via a failure to train. As alleged, Irons has

failed to plead facts supporting a plausible claim that the City had any unconstitutional policy or custom; therefore, the City's motion to dismiss will be granted without prejudice.

It is, therefore, **ORDERED** that:

1. Defendant's Motion to Dismiss (Doc. 24) is **GRANTED**;

2. Plaintiff's Fourth Amendment claim as to false arrest against the City in the First Amended Complaint (Doc. 23) is hereby **DISMISSED**, with prejudice;

3. Plaintiff's Fourth Amendment claim as to unlawful search against the City in the First Amended Complaint (Doc. 23) is hereby **DISMISSED**, without prejudice; and

4. Plaintiff may file an Amended Complaint as to his unlawful search claim against the City on or before September 29, 2016.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on September 14, 2016.

_____
GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party