UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

DEREASE L. IRONS,

    Plaintiff,

v.                                         Case No. 6:16-cv-479-Orl-37GJK

JAMES PATTON,

    Defendant.

_____

## ORDER

This matter is before the Court on Defendant James Patton's ("**Defendant**") Motion for Summary Judgment. (Doc. 88 ("**Motion**").) Plaintiff Derease L. Irons ("**Plaintiff**") initiated this action under 42 U.S.C. § 1983 based on an incident that occurred on July 10, 2012 between him and Defendant, a Sergeant at the Holly Hill Police Department at the time. (Doc. 23.) Plaintiff claims that Defendant violated his Fourth Amendment rights by performing an unlawful search of the vehicle Plaintiff was driving, and seeks damages accordingly. (*Id.* ¶¶ 35–44.) Defendant opposes, and moves for summary judgment. For the following reasons, the Motion is due to be granted.

### I.     BACKGROUND[1]

Around noon on July 10, 2012, Plaintiff drove to Wal-Mart to purchase a gas card

---

[1] The facts recited here are not the actual facts of the case. *See Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006). Rather, they reflect Plaintiff's "best case" — that is, the Court must consider the facts in the light most favorable to Plaintiff. *See Robinson v. Arrugueta*, 415 F.3d 1252, 1257 (11th Cir. 2005); *see also Walker v. City of Riviera Beach*, 212 F. App'x 835, 837 (11th Cir. 2006).

-1-

in a car he borrowed from his ex-girlfriend ("**Vehicle**"). (Doc. 87, pp. 50–52.) Accompanying him for the ride was his six-month-old daughter ("**Child**") who Plaintiff placed in her car seat in the back on the driver's side, reverse-situated to face the trunk. (*Id.* at 51; *see also* Doc. 86, pp. 6–7; Doc. 85-2, p. 12.) When Plaintiff arrived at the Wal-Mart, he parked the Vehicle directly in front of the store, close to the fire lane. (Doc. 87, p. 55.) Believing the stop to be a quick transaction, Plaintiff left the engine running, doors unlocked, windows up, air conditioning on, and his Child inside. (*Id.* at 53, 54, 93–94). The radio was not turned on. (*Id.* at 96–97.) Plaintiff went directly to the customer service counter at the front of the store and entered the queue. (*Id.* at 53.)

As Plaintiff waited in line, he noticed a police car parked by the Vehicle. (*Id.* at 56.) From inside, he observed Defendant approach the Vehicle and open its door. (*Id.* at 62.) While watching, Plaintiff dialed his mother from his cell phone to come meet him at Wal-Mart. (*Id.* at 62–63.) He had been driving on a suspended license, and upon seeing Defendant at the Vehicle, thought that he would be arrested. (*Id.* at 63.) He stayed in Wal-Mart for another seven minutes and then exited the store. (*Id.* at 65.)

On leaving the store, Plaintiff lingered by the entrance. (*Id.* at 67.) He did not say anything to Defendant or inch toward the Vehicle, whose door was still open. (*Id.* at 67–68.) He stayed on the phone, and then Defendant walked up to him to ask whether he knew anything about the Vehicle or the Child. (*Id.* at 68.) Eventually, Plaintiff acknowledged both. (*Id.*; *see also* Doc. 86, pp. 10–11.) Defendant then arrested Plaintiff for child neglect. (Doc. 87, p. 68.)

After Plaintiff's arrest, Plaintiff's mother and Officer Misty Howey arrived at the scene. (*Id.* at 68, 71; *see also* Doc. 86, pp. 13–14.) Officer Howey transported Plaintiff to the police station where he was charged and then incarcerated pending trial. (Doc. 86, p. 14; *see also* Doc. 23, ¶¶ 23–24.) While incarcerated, Plaintiff filed a motion to suppress in state court all evidence obtained from the Vehicle, claiming Defendant performed an unlawful search in violation of the Fourth Amendment. (Doc. 23, ¶¶ 25–27.) The court granted Plaintiff's motion to suppress, which resulted in his release from custody with the charges against him dropped.[2] (*Id.* ¶¶ 28–30.)

Plaintiff then commenced this § 1983 action, bringing various claims against Defendant, the City of Holly Hill, and Holly Hill Police Department Chief of Police Stephen Aldrich. (Doc. 23.) Whittled down, the sole claim left alleges that Defendant violated Plaintiff's Fourth Amendment rights by performing an unlawful search of the Vehicle. (Docs. 37, 40.) On this, Defendant moves for summary judgment. (Doc. 88.) Plaintiff failed to submit a timely response, so the Motion is now ripe for the Court's consideration. (*See* Doc. 97.)

## II. LEGAL STANDARDS

Summary judgment is appropriate only if the movant shows that there is no genuine dispute as to any material fact and that [it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). As to issues for

---

[2] The fact that the state court found the search unreasonable under the Fourth Amendment does not foreclose Defendant's qualified immunity argument. *See Anderson v. Creighton*, 483 U.S. 635, 643 (1987) (rejecting the argument that officials alleged to have violated the Fourth Amendment cannot receive qualified immunity).

which the movant would bear the burden of proof at trial, it must affirmatively show the absence of a genuine issue of material fact and support its motion with credible evidence demonstrating that no reasonable jury could find for the nonmoving party on all of the essential elements of its case. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993) (citing *United States v. Four Parcels of Real Prop. in Green & Tuscaloosa Ctys*, 941, F.2d 1428, 1438 (11th Cir. 1991)).

As to issues for which the nonmovant would bear the burden of proof at trial, the movant has two options: (1) it may simply point out an absence of evidence to support the nonmoving party's case; or (2) it may provide "affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial." *Four Parcels*, 941 F.2d at 1438 (citing *Celotex Corp.*, 477 U.S. at 325). "The burden then shifts to the nonmoving party, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists." *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006) (citing *Fitzpatrick*, 2 F.3d at 1115–17).

"A factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Four Parcels*, 941 F.2d at 1437 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A court must view the evidence and all reasonable inferences drawn from the evidence in the light most favorable to the nonmovant, *Battle v. Bd. of Regents*, 468 F.3d 755, 759 (11th Cir. 2006), such that "when conflict arises between the facts evidenced by the parties, [the] court credit[s] the nonmoving party's version," *Evans v. Stephens*, 407 F.3d 1272, 1278 (11th Cir. 2005). However, "[the] court need not permit a case to go to a jury . . . when the inferences that

are drawn from the evidence, and upon which the nonmovant relies, are 'implausible.'" *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 743 (11th Cir. 1996). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III.  ANALYSIS

Defendant asserts several arguments to support summary judgment in his favor. (*See* Doc. 88, pp. 8-24.) This Order focuses on Defendant's meritorious qualified immunity argument that: (1) his actions did not violate Plaintiff's constitutional rights; and (2) even if a violation occurred, it was not clearly established law at the time that his actions were unconstitutional. (*Id.* at 19–24.)

Section 1983 provides aggrieved persons with a procedural mechanism to seek redress for constitutional violations that are committed while a defendant is acting under color of state law. 42 U.S.C. § 1983. Acts performed by law enforcement officers—even if illegal or unauthorized—are considered to have been performed under color of state law so long as the acts are done in the defendant's capacity as a law enforcement officer. *See West v. Atkins*, 487 U.S. 42, 49–50 (1988). To avoid individual liability under § 1983, law enforcement officers may invoke the defense of qualified immunity, which protects "all but the plainly incompetent or one who is knowingly violating federal law." *See Depalis-*

*Lachaud v. Noel*, 505 F. App'x 864, 867 (11th Cir. 2013).³ Qualified immunity is a question of law to be decided by the Court, and it is evaluated under an "objective-reasonableness" standard. *Courson v. McMillian*, 939 F.2d 1479, 1486–87 (11th Cir. 1991).

"In order to receive qualified immunity, the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). Here, this element is undisputed. Therefore, the burden shifts to the plaintiff to show that qualified immunity is not appropriate. *Id.*; *see also Terrell v. Smith*, 668 F.3d 1244, 1250 (11th Cir. 2012). To do so, the plaintiff must establish that: (1) the facts of the case make out a violation of a constitutional right; and (2) the constitutional right was "clearly established" at the time of the putative misconduct. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009). The Court may address the prongs of the qualified immunity inquiry in any order. *Id.* at 236.

With this, and taking into account Plaintiff's *pro se* status and the lack of responsive filings, the Court assumes for purposes of the Motion that Plaintiff meets the first prong—that Defendant's actions rose to the level of a constitutional violation. *See id.* Thus, the analysis centers on the second prong: whether Defendant's actions violated clearly established law at the time of the incident.

The inquiry of whether a constitutional right is clearly established turns on the specific facts of the case. *Loftus v. Clark–Moore,* 690 F.3d 1200, 1204 (11th Cir. 2012). "The

---

³ Unpublished opinions are not binding precedent, but may be considered as persuasive authority. *See* 11th Cir. R. 36-2; *see also United States v. Almedina*, 686 F.3d 1312, 1316 n.1 (11th Cir. 2012).

relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Whittier v. Kobayashi*, 581 F.3d 1304, 1308 (11th Cir. 2009) (quotation omitted). "For qualified immunity to be surrendered, pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about) the conclusion for every like-situated, reasonable government agent that what defendant is doing violates . . . law in the circumstances." *Jenkins by Hall v. Talladega City Bd. of Educ.*, 115 F.3d 821, 823 (11th Cir.1997) (quoting *Lassiter v. Ala. A & M Univ.*, 28 F.3d 1146, 1150 (11th Cir.1994) (en banc)).

In the Fourth Amendment context, an officer is entitled to qualified immunity if "arguable probable cause" existed at the time of the search, as opposed to "actual" probable cause. *See Montoute v. Carr*, 114 F.3d 181, 184 (11th Cir. 1997); *see also, e.g.*, *Fish v. Brown*, 838 F.3d 1153, 1167 (11th Cir. 2016). To show arguable probable cause, "the facts and circumstances must be such that the officer reasonably could have *believed* that probable cause existed." *Montoute*, 114 F.3d at 184 (emphasis added). Thus, the qualified immunity inquiry focuses on "the information [that] the officer possessed" to objectively analyze a reasonable officer's belief of probable cause in that situation. *See id.* "Even law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity." *Id.* (quoting *Hunter*, 502 U.S. at 227). In this respect, qualified immunity protects some mistakes in judgment to protect "all but the plainly incompetent or those who knowingly violate the law." *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 343 (1986)).

Here, Defendant had at least arguable probable cause to search the Vehicle, so his actions did not violate clearly established law at the time. The circumstances surrounding the search speak for themselves, even taking the facts in Plaintiff's best light: On a 92 degree July day in Florida, around noon, Defendant entered the Wal-Mart parking lot to conduct a standard patrol. (Doc. 86, p. 5.) Upon first entering the lot, Defendant noticed the Vehicle idling in or near the fire lane, but did not approach it right away, despite its obstructing nature. (*Id.* at 5–6.) Rather, he followed his routine by first driving straight through the lot and then going around the back of the store. (*Id.*) Only after he finished his patrol round did he pay the Vehicle closer attention, because it remained in the same location. (*Id.* at 6.) He drove next to it to ask the driver to move, but could not see anyone in the driver's seat. (*Id.*) He parked his patrol vehicle and then approached the Vehicle, whose engine was running. (*Id.*) This fact alone raised concern, based on Defendant's familiarity with the Wal-Mart parking lot as a high-crime area where vehicle thefts and carjacking were common, not to mention Defendant's experiences involving abandoned children in vehicles. (*Id.* at 9–10.) With this, while standing next to Vehicle on the driver's side, Defendant analyzed the situation and looked around to see if anyone in the area was attempting to lay claim to the vehicle. (*Id.* at 6.) No one appeared to do so, and then something within the car sparked the officer's attention—he either saw movement or heard a cry coming from inside the vehicle.[4] (*Id.* at 6.) At that point, Defendant acted and

---

[4] In Plaintiff's initial pleadings, he disputed whether Defendant could see the Vehicle's backseat because its windows were "tinted." (*See* Doc. 23, ¶ 14.) But in his deposition, Plaintiff offered contradictory testimony on this point, at first saying that he could clearly see into the vehicle to watch the Child while inside Wal-Mart, but then

-8-

opened a door to look inside, believing his actions were justified because someone in distress was in the Vehicle. (*Id.* at 6–7.) All this while, Plaintiff stayed in the store watching the situation unfold. (Doc. 87, p. 65.)

Under the circumstances, the Court concludes that Defendant's actions comport with those of a reasonable law enforcement officer. Under Florida law, it is a criminal offense for a parent to leave a child younger than six unattended or unsupervised in a motor vehicle for over fifteen minutes, and a civil offense if the child is left "[f]or any period of time if the motor vehicle is running, the health of the child is in danger, or the child appears to be in distress." Fla. Stat. § 316.6135 (1)–(3). Furthermore, "[a]ny law enforcement officer who observes a child left unattended or unsupervised in a motor vehicle . . . may use whatever means are reasonably necessary to protect the minor child and to remove the child from the vehicle." *Id.* § 316.6135 (5). Thus if Defendant "observed" the Child in the running Vehicle, his actions were justified under Florida law.

But, even if Defendant were unsure whether a *child* was in the Vehicle and opened the door to investigate, the Court still finds that Defendant is entitled to qualified immunity. A reasonable officer, armed with Defendant's knowledge and experience, in this situation—a running vehicle parked near the fire lane that had not moved in several minutes without anyone nearby acknowledging it, in a high-crime area prone to carjacking and auto thefts, plus the alert of something inside the Vehicle—would have

---

backtracked and said that no one could see inside the backseat. (Doc. 87, pp. 57, 60, 88–89, 92–93.) The Court notes this discrepancy and finds that even if Defendant could not see in the vehicle, arguable probable cause existed under the circumstances to justify Defendant's actions.

believed there was probable cause to search the Vehicle, and done so. *See Montoute*, 114 F.3d at 184. As such, Defendant's actions did not violate clearly established law at the time. Defendant is therefore entitled to qualified immunity, and the Motion is due to be granted.

### IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant James Patton's Motion for Summary Judgment (Doc. 88) is **GRANTED**.

2. The Clerk is **DIRECTED** to enter judgment in favor of Defendant James Patton and against Plaintiff Derease L. Irons on Plaintiff's unreasonable search and seizure claim set forth in the Complaint. (Doc. 23, ¶¶ 35–44.)

3. The Clerk is **DIRECTED** to close the file.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on December 5, 2017.



ROY B. DALTON JR.
United States District Judge

Copies to:
Counsel of Record
*Pro Se* Plaintiff